Mary JACKSON and Elizabeth A.
Pollick, Plaintiffs,

v.

ARMSTRONG SCHOOL DISTRICT,
Defendant.

Civ. A. No. 76–885.

United States District Court,
W. D. Pennsylvania.

April 12, 1977.

Darrell L. Kadunce, Butler, Pa., for plaintiffs.

Patrick W. Ritchey, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

MEMORANDUM

JOHN L. MILLER, District Judge.

Mary Jackson and Elizabeth A. Pollick bring this sex discrimination suit to rectify an employment situation which they contend is violative of Title VII of the Civil Rights Act of 1964, as amended, (Title

VII),[1] and the Pennsylvania Human Relations Act (PHRA)[2]. Before the Court is defendant's motion to dismiss per Rule 12(b) of the Federal Rules of Civil Procedure. As grounds for dismissal defendant asserts with respect to Count I (Title VII claim) that plaintiffs have (1) failed to state a claim of sex discrimination and (2) failed to join an indispensable party. With respect to Count II (PHRA claim) defendant incorporates the above mentioned grounds and also asserts that we lack jurisdiction over the subject matter.

■ Our concern for proper jurisdiction always being primary, we turn our attention first to Count II. Despite the complaint's averments the sole jurisdictional basis for this lawsuit is found in Title VII. 42 U.S.C. § 2000e–5(f). Plaintiffs erroneously maintain that this Court's jurisdiction also attaches by virtue of 28 U.S.C. § 1343(4)[3] and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Section 1343(4) confers jurisdiction over civil rights claims arising under federal statutes not here pertinent. And the declaratory judgment statute, not being a jurisdictional base, merely creates a remedy where federal jurisdiction independently exists. *See Jones v. United Gas Improvement Corp.*, 383 F.Supp. 420, 422 n. 1 (E.D.Pa.1974). The Court therefore has no jurisdiction over the claim being advanced under the PHRA.

With regard to Count I defendant makes two arguments either of which, if accepted, calls for dismissal of the Title VII claim. Under the facts alleged we are persuaded that plaintiffs have failed to state a claim under Title VII and shall dismiss on that ground alone. Taking the allegations of the complaint as true the claim *sub judice* is stated as follows:

Both plaintiffs are employed as school teachers in the defendant school district.

1. 42 U.S.C. § 2000e *et seq.* (Supp. *V* 1975).

2. 43 P.S. § 951 *et seq.* (Supp.1976–1977).

3. 28 U.S.C. § 1343(4) provides:
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

Jackson works at Worthington High School which is situated in Worthington, Pennsylvania while Pollick practices her profession at Ford City High School in Ford City, Pennsylvania. This case does not, however, concern their duties as teachers in the academic sense but rather as instructors in the athletic sense. For at their respective schools plaintiffs are, and have been since 1972, engaged in the coaching of women's basketball at both the Varsity and Junior Varsity levels.

In exchange for these extra-curricular duties plaintiffs are compensated at the rate of $324.00 per year while their counterparts—presumably all men—who coach men's basketball are paid as follows:

|  | MEN'S | |
|---|---|---|
| **VARSITY** | | **JUNIOR VARSITY** |
| $ 972.00 – first year | | $756.00 – first year |
| $1080.00 – second year | | $864.00 – second year |
| $1296.00 – third year | | $972.00 – each succeeding year |

Plaintiffs' duties require them to coach as many, if not more, women players as are coached in the men's basketball program. The also had to establish the women's program which was a duty not required of the men's coaching staff. And, except for the exhibition season, the women's basketball schedule was equal to the men's schedule.

Based on the above factual allegations plaintiffs contend that defendant has violated Title VII by:

(1) failing to compensate them at the same rate afforded to coaches of men's basketball;

(2) failing to compensate them at the same rate afforded to coaches of men's basketball for an equal amount of work; and

(3) failing to otherwise treat them equally with the coaches of men's basketball.

\* \* \* \* \* \*

(4) To recover damages or to secure equitable or other relief under any *Act of Congress* providing for the protection of civil rights, including the right to vote. (Emphasis added.)

The nub of their claim is that they are not being accorded equal terms and conditions of employment for similar, but not identical, work being performed.

Also pertinent, but not alleged by plaintiffs, is the fact that there are eight coaches—four men and four women—of women's basketball in the Armstrong School District and they *all* are paid $324.00 per school year for their services.[4]

The circumstances under which this controversy arises are indeed peculiar. It is quite evident that plaintiffs believe coaching women's basketball to be every bit as exacting, both in time and effort, as tutoring the men's version of the sport. In reality, considering the disparities in natural ability long nurtured by tradition with the misguided notion—now being repressed—that the game was meant to be played only by males, a good argument could be made that schooling the feminine gender in such rudiments as dribbling and jump-shooting is indeed more difficult. However, that there are differences *vel non* between the sport's participants and/or the programs within which they participate which may or may not justify unequal rates of pay to those who hone the skills of either group is not the question spawned by this legal action.

We accept as fact, for purposes of this motion, the contention that plaintiffs, in coaching the women, are doing more and getting paid less than those who coach the men. In form that is arguably discrimination in employment based on sex; in substance that is not a valid claim under Title VII for the simple reason that the disparity in treatment is not based on *plaintiffs'* sex.

Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1), makes it unlawful for an employer—

> * * * to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of *such individual's*

* * * *sex* . . . . (Emphasis added.)

Because plaintiffs are faced with a situation—male coaches of women's basketball being paid the exact same amount as female coaches of women's basketball—that really cannot be squared with a charge of discrimination *based on sex*, they apparently seek to satisfy that element of the claim by relying on the sex of the sport's participants.

It is clear from the statute that the sex of the claimants must be the basis of the discriminatory conduct. Here plaintiffs are not discriminated against because of *their* sex. They are treated equally with the men who coach women's basketball. Allowing their claim, as stated, to stand would not only emasculate the statutory language but would embrace a construction that renders the sex of the employee immaterial to the claim. Following their argument further the male coaches of women's basketball would be free to lodge the same charge. In turn we envision the anomalous situation of the school district, which shows no sexual preference toward women's basketball coaches, being sued for discriminatory practices. This is not what Title VII says nor contemplates. It was designed to curb discriminatory practices committed against certain classes—*e. g.,* sex, race, or ethnic derivation—of *employees* with the idealistic goal of engendering parity for all.

Plaintiffs do not charge that they were denied men's basketball coaching positions because they are women. Rather plaintiffs contend that they are denied higher wages and better working conditions because they *coach* women. While their case may be cited as an example of unfairness in employment it is not built to dimensions compatible with the statutory scheme. As recently stated by the Fifth Circuit:

> The Supreme Court has noted that the objective of Congress in passing the Civil Rights Act of 1964, of which the sex discrimination provision was a part, was

---

4. Motion to Dismiss ¶ 1 which is verified by the attached affidavit of Richard Stottlemyer, Superintendent of the Armstrong School District.

to achieve equality of employment opportunity and to remove certain barriers. These barriers are those which operate to favor one group of *employees identifiable* by race, color, religion, *sex*, or national origin. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] [1974] . . . .

*Stroud v. Delta Air Lines, Inc.*, 544 F.2d 892, 893 (5 Cir. 1977) (emphasis added); *cf. Ripp v. Dobbs Houses, Inc.*, 366 F.Supp. 205, 208–09 (N.D.Ala.1973).

 Being convinced that plaintiffs have failed to state a claim under Title VII the Court shall grant summary judgment for defendant as to Count I.[5]

An appropriate order shall issue.

---

5. Rule 12(b) mandates that we treat part of defendant's motion as one for summary judgment since we considered matters other than the complaint in ruling on the motion.

