STATE DIVISION OF HUMAN RIGHTS, Respondent, v SYRACUSE CITY TEACHERS ASSOCIATION, INC., et al., Petitioners. (Proceeding No. 1.)

STATE DIVISION OF HUMAN RIGHTS, Respondent, v BOARD OF EDUCATION OF THE SYRACUSE CITY SCHOOL DISTRICT, Petitioner. (Proceeding No. 2.)

Fourth Department, January 19, 1979

APPEARANCES OF COUNSEL

*Bernard Ashe (Gerard De Wolf* of counsel), for petitioners in Appeal No. 1.

*Ann Thacher Anderson (Elaine Berger* of counsel), for State Division of Human Rights.

*Hancock, Estabrook, Ryan, Shove & Hust (James Burns* of counsel), for petitioner in Appeal No. 2.

## OPINION OF THE COURT

SIMONS, J.

Complainant Bratt was formerly a ninth grade Social Studies teacher at the Eastwood Junior High School in the Syracuse School District. In December, 1968 she was asked by the school's Physical Education teacher whether she would coach the girls' basketball team. She agreed and enlisted the aid of complainant Patrick, a Mathematics teacher. The two started their coaching duties in January, 1969, with about 70 to 80 girls trying out for the team. This number was reduced to a group of 15 which practiced twice per week, played four games and won one scheduled game by forfeit. Complainants concluded their coaching duties in February, 1969. They were promised no additional pay for this activity and received none. When they discovered later in the year that the boys' basketball coach had been paid $308 for coaching the boys' basketball team, they filed a grievance pursuant to the employment contract between petitioners, the board of education and the association, but that grievance was not pursued. Instead, on June 13, 1969 complainants initiated proceedings with respondent division alleging that they had been the subject of unlawful discriminatory practices in their employment because they were female.* The complaints were later amended to charge petitioners with additional acts of discrimination in negotiating and executing the employment contracts for 1970-1971, 1972-1973 and the supplementary agreement of 1973.

---

* On a prior appeal we held that the grievance proceedings did not constitute an election of remedies barring this proceeding (see *Matter of Board of Educ. v State Div. of Human Rights,* 38 AD2d 245).

The commissioner found that the board of education had discriminated against complainants by failing to pay them for coaching the girls' basketball team in 1969. He ordered payment of an amount equal to that received by the coach of the boys' basketball team, $308, to be divided $154 for each complainant, plus interest. The commissioner also ordered petitioners to desist from discriminatory practices and, finding the 1973 supplemental agreement discriminatory, he ordered the board to compensate female employees coaching girls' athletic programs at rates which it pays male employees for coaching high school interscholastic teams in gymnastics, basketball, soccer, track and tennis, and junior high school interscholastic teams in basketball and track. Presumably, the order referred to females coaching girls' teams in the enumerated sports and directed that their pay equal that of males coaching boys' teams in the enumerated sports. The commissioner's order was affirmed by the Human Rights Appeal Board and petitioners instituted this proceeding pursuant to section 298 of the Executive Law.

The contract for the year 1968-1969 was facially neutral and the first issue for determination is whether that contract, as applied, discriminated against females. The second issue concerns the supplementary agreement of 1973 which expressly differentiated in pay scales between coaches of girls' and boys' teams. Petitioners challenge the commissioner's order which in essence found the 1973 contract discriminatory per se. The problem arises because of the admittedly disparate treatment accorded to established boys' athletic programs and developing girls' athletic programs. For example, the coach of the boys' football team engaged in a school function which had matured over a number of years and which had well-defined responsibilities and time requirements. Conversely, in 1968 the girls' athletic program in the Syracuse junior high school was undeveloped and subordinated to the boys' program with respect to budget priorities and the use of school facilities. Throughout the testimony in the record it is apparent that one of the main irritants in the situation was that the girls' athletic program played a role secondary to the boys' program and that because of its slower development, female coaches had fewer paid coaching opportunities. Nevertheless, the proof in the record establishes that the coaches of girls' junior high teams spent less time and undertook less responsibility in this extracurricular activity than the coaches of

similar boys' junior high teams. In the case of junior high basketball the boys' coach spent approximately twice as much time in the activity. The dispositive issue, therefore, is whether an employer may compensate coaches of girls' teams performing duties of the same nature as coaches of boys' teams, but to a lesser degree, differently from the coaches of boys' teams. We hold that it may and we grant the petition and annul the determination appealed.

■ The scope of our review is spelled out in the statute (Executive Law, § 298). We must confirm if the commissioner's determination is supported by "sufficient evidence on the record considered as a whole." "Sufficient evidence" is substantial evidence *(State Div. of Human Rights v Columbia Univ. in City of N. Y.,* 39 NY2d 612; *State Div. of Human Rights v City of Syracuse,* 57 AD2d 452, affd 43 NY2d 958), i.e., " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' " *(Matter of Stork Rest. v Boland,* 282 NY 256, 274, quoting *Consolidated Edison Co. v Labor Bd.,* 305 US 197, 229; and see *Matter of Collins v Codd,* 38 NY2d 269, 270-271).

The contract governing the 1968-1969 school year contained an appendix itemizing the pay for coaching certain enumerated junior high teams. The appendix was entitled "Extracurricular Activities (Junior High Coaching Salary Schedule)". The stated pay for coaching basketball was $308 for the season. The contract made no distinction between girls' or boys' teams and it did not specify the degree of competition required before payment was earned. Complainants contend therefore that they were entitled to be paid as was the male coach of the boys' teams regardless of the time or responsibility involved. Having proved that the coach of the boys' basketball team was paid $308, they maintain that they have established a prima facie case and the burden has shifted to petitioners to justify the disparity in pay and prove that it was not an act of unlawful discrimination (see *Matter of Pace Coll. v Commission on Human Rights of City of N. Y.,* 38 NY2d 28, 39).

Petitioners' witnesses met that burden. It was their testimony that the pay schedule was applicable only to interscholastic level teams. The boys' team was an interscholastic team because it practiced daily, it played a fixed round robin schedule with the other eight Syracuse junior high schools, pursued a season considerably longer than the girls' team and

required a substantially greater amount of the coach's time and attention. Furthermore, there had been a boys' junior high interscholastic program for several years which had matured and developed to the degree that coaches received pay after 1967.

By contrast, interest in the girls' program was still developing from the "invitational", "play day" or intramural stage of competition. In 1969 the girls' basketball team was at the "extra mural" level. They played a few games with other Syracuse junior high schools but less than a full schedule. Formal recognition of a girls' interscholastic program was not achieved until the 1973 supplemental agreement which provided a payment schedule for coaches of girls' teams. Petitioners contend that it was generally known and accepted by teachers, including complainants, that coaches of such teams did not receive compensation. The evidence in the record supports that contention and if the language of the contract was at variance with that interpretation by the board, that was a matter of construction for the contract grievance procedure. But the accepted practice of compensating coaches was not discriminatory because the coaches of boys' and girls' teams did not perform equal work and they were not, therefore, entitled to equal pay (cf. *Mize v State Div. of Human Rights,* 38 AD2d 278, affd 31 NY2d 1032). Complainants undertook similar duties, in a similar sport, but they were engaged in a different level of activity than the coaches of boys' teams and the evidence in the record does not establish that male coaches at the same level of activity as complainants received compensation (see *State Div. of Human Rights v Eastman Kodak Co.,* 55 AD2d 842; cf. *Mize v State Div. of Human Rights, supra).* On the contrary, the proof establishes that males coaching the girls' track and gymnastic teams, teams which were also in a preinterscholastic level of competition, were not compensated for their work either, although coaches of the boys' track and gymnastic teams were. It is regrettable that the girls' athletic program had not developed as fully as the boys' program in 1969, but complainants were not aggrieved by that circumstance and the board was not guilty of unlawful discrimination in employing them when female and male coaches of girls' teams were treated similarly (see *Jackson v Armstrong School Dist.,* 430 F Supp 1050; *Kenneweg v Hampton Twp. School Dist.,* 438 F Supp 575). Indeed, to award complainants' compensation in this case

would produce the incongruous result of discriminating against the males who coached the girls' track and gymnastic teams.

Next, it is contended that the employment contracts of 1970, 1972 and 1973 were discriminatory and that petitioner association is guilty of unlawful discrimination in negotiating and executing these agreements (see *Union Free School Dist. No. 6 v New York State Human Rights Appeal Bd.,* 35 NY2d 371, 378-379, citing with approval *Matter of Union Free School Dist. No. 6 v New York State Div. of Human Rights,* 43 AD2d 31). The hearing officer found that complainants had failed to prove that these contracts were discriminatory, but the commissioner disagreed with him as to the supplemental agreement of 1973. While the hearing officer's report is entitled to great weight, the commissioner need not accept his finding provided there is substantial evidence in the record to support the commissioner's determination *(Matter of Simpson v Wolansky,* 38 NY2d 391, 394).

Starting in 1970 the teachers' agreements recognized that payment was appropriate for coaching "extra mural" teams or teams competing on a lesser level than full interscholastic competition. The contracts of 1970-1971 and 1972-1973 set a flat fee for coaching teams engaged in extramural competition without distinction as to whether the teams were girls or boys. Those contracts as written were not discriminatory. In 1973 the girls' athletic program had advanced to the stage where the parties recognized girls' interscholastic competition and a supplemental agreement was negotiated which provided separate pay schedules for coaches of girls' and boys' interscholastic teams. The rate of pay for coaches of interscholastic teams was a matter of negotiation between the board and the association, but the association's proposals for coaches of boys' teams similar to those finally adopted, were prepared by a group of faculty coaches of boys' sports and the proposals for coaches of girls' teams were made by a similar faculty committee of coaches of girls' teams. The pay was fixed by multiplying by an index number a fixed dollar amount for each step in the pay plan. The index number represented the sum of eight weighted factors graded on a scale of one to five. The eight factors considered were: hours involved, number of students involved, experience required, "crowd spectator reaction pressure", injury element, weekends after school, vacation time involved, equipment and facility responsibility and

bus travel supervision. As so determined, the 1973 supplemental agreement for junior high coaches provided for these comparative rates of pay:

| Junior High School Boys | Index | Step 1 ($7.00) | Step 2 ($8.00) | Step 3 ($8.50) | Step 4 ($9.00) | Step 5 ($10.00) |
|---|---|---|---|---|---|---|
| Basketball | 44 | $308 | $352 | $374 | $396 | $440 |
| Gymnastics | 32 | $224 | $256 | $272 | $288 | $320 |
| Track and Field | 28 | $196 | $224 | $238 | $252 | $280 |
| Junior High School Girls | | | | | | |
| Girls' Gymnastics | 32 | $224 | $256 | $272 | $228 | $320 |
| Girls' Basketball | 29 | $203 | $232 | $246.50 | $261 | $290 |
| Girls' Track | 23 | $161 | $184 | $195.50 | $207 | $230 |

The commissioner found that the agreement was discriminatory and he ordered, prospectively, that the coaches of boys' and girls' teams, be they male or female, be paid the same in the high school sports of gymnastics, basketball, soccer, track and tennis, and the junior high sports of basketball and track. His finding that the rates of pay were discriminatory was obviously based upon the differences appearing in the schedule itself. The pay established becomes discriminatory, however, only if two premises are assumed: first, that the jobs of coaching a boys' team and coaching a girls' team are the same, and second, that only females coached girls' teams and only males coached boys' teams. There is no evidence in the record that this is true with respect to high school sports and what little evidence there is in the record with respect to junior high school basketball and track is to the contrary.

In the case of gymnastics the faculty committees rated the job index for coaching boys' and girls' teams the same and the pay was therefore equal whether the coach be male or female. In track and basketball the index differed but it differed because of the application of identical standards by independent faculty committees which was not shown to be discriminatory. It was the determination of the faculty committees, not contradicted by the evidence in this record, that the jobs of coaching the boys' gymnastics team and coaching the girls' gymnastics team were equal in responsibility and involvement and that the jobs of coaching the boys' basketball and track teams required a measurably greater degree of responsibility

and involvement than coaching girls' basketball and track teams.

Furthermore, although it may be presumed that the coaches of boys' teams will normally be male and the coaches of girls' teams will normally be female, there was no evidence that any rule or practice of petitioners mandated such an arrangement and there was evidence that in at least two instances in 1968 teachers of one sex coached athletic teams of the other sex.

Respondents object that the pay index for coaching girls' sports was determined by female coaches and the pay index for coaching boys' teams was determined by male coaches. The standards were appropriately proposed by groups consisting of coaches involved, persons familiar with the requirements and responsibilities of the particular sport indexed, openly and through negotiation.

We agree with the hearing officer that the evidence in the record fails to support a finding that complainants were the victims of unlawful discrimination in the terms and conditions of their employment by reason of the unequal 1973 salary schedules for junior high coaches of girls' and boys' teams.

The petition should be granted and the determination of the Commissioner of Human Rights annulled.

CARDAMONE, J. P., DILLON, SCHNEPP and WITMER, JJ., concur.

Petition unanimously granted, without costs, and determinations annulled.