■ In the Matter of KINGS PARK CENTRAL SCHOOL DISTRICT No. 5 et al., Petitioners, v STATE DIVISION OF HUMAN RIGHTS et al., Respondents.—Proceeding pursuant to section 298 of the Executive Law to review so much of an order of the State Human Rights Appeal Board, dated March 16, 1979, as affirmed those portions of an order of the State Division of Human Rights, dated June 9, 1978, which (1) found that the petitioners had unlawfully discriminated against the complainants on the basis of sex and (2) directed certain affirmative action, including an award of back pay for services rendered by them during the 1973-1974 and 1974-1975 school years. The State division has cross-applied for enforcement of the order. Petition granted, order annulled insofar as reviewed, on the law, cross application denied, without costs or disbursements, and the complaints charging an unlawful discriminatory practice are dismissed. The complainants are female teachers in the petitioners' district who served as athletic coaches for girls' teams during the 1973-1974 and 1974-1975 school years. They filed verified complaints with the State Division of Human Rights alleging that they had suffered unlawful discrimination based upon their sex in that they had been paid less than any male coach. The school district denied the allegations and a hearing was held. The evidence revealed that, for the years in question, pay scales for extracurricular assignments were established in collective bargaining agreements entered into between the school district and the Classroom Teachers' Association. The parties devised a code system by which sports activities were graded for purposes of compensation for coaching duties. There were 10 levels, and no girls' sports activity was

ranked higher than at the fourth level, while boys' activities ranged from the fourth level up to the tenth. The factors determining the level assigned to a particular activity were the number of weeks in the season for the sport, the number of days per week that coaching occurred, the number of hours per day spent coaching and supervising in locker rooms, the number of students on each team, the total number of games and scrimmages, the number of games and scrimmages played away from school, the nature of the athletic equipment involved, the compensation previously paid for the position, and the practice followed at other schools. It was further established that coaching positions were filled from the ranks of those requesting the specific assignment. There is no rule, regulation, or practice which mandates that boys' teams be coached by men or that girls' teams be coached by women. And, although no woman had yet been assigned as coach of a boys' team, the school district had in fact assigned a male coach to the girls' tennis team. There seems no question but that the pay scales are in approximate conformity with the criteria underlying their establishment. Tennis, for example, presents a case in point. Both girls and boys participate in varsity tennis. However, the boys' season lasts 12 weeks while the girls' last only 8. Both play three hours per day, five days per week. The boys' team, consisting of 15 students, plays a total of 18 "games", 9 of which are away from school. The 12-student girls' team plays only 8 "games", 4 of which are away. Accordingly, the coach of the boys' team receives compensation of $716 while the girls' coach is paid $572. Significantly, calculated on the basis of time actually expended, the boys' coach receives $3.98 per hour while the hourly wage for the girls' coach is $4.77. The complainants have never alleged, and the division does not now assert, that the school district's hourly wage analysis is mathematically incorrect. It is argued, however, that the bargaining agreements did not refer to or contemplate an hourly wage criterion but provided simply for a seasonal stipend. Moreover, the division contends that the entire system upon which the complainants' salaries were based was inherently discriminatory since, in practice, it limited female varsity coaches to no greater than the fourth level—this although no distinction was or could be drawn between male and female coaches with respect to skills required or responsibilities carried. The division further points out that the pay scales were based as well upon previous pay rates and practices followed at other schools, and that therefore pre-existing inequities in compensation were perpetuated. Although we are not unsympathetic to the division's position, we are constrained to reject it because, in our view, it runs contrary to controlling statutory law. Subdivision 1 of section 296 of the Executive Law provides, in part, that: "It shall be an unlawful discriminatory practice: (a) For an employer * * * because of the * * * sex * * * of any individual * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Subdivision 1 of section 194 of the Labor Law provides, in pertinent part: "No employee shall be paid a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, except where payment is made pursuant to a differential based on: * * * d. any other factor other than sex." We have no reason to doubt that the job performed by the complainants herein requires skill, effort and responsibility fully equal to that of their male counterparts. Nevertheless, they do not perform equal work since the time they expend in coaching and the amount of traveling they are required to undergo are significantly less

than that required of coaches of boys' teams. Moreover, there has been no showing that the complainants have been barred from earning greater stipends by any rule or regulation prohibiting them from coaching a boys' team. Accordingly, on this record, the finding of discrimination is not supported by substantial evidence and the order must be annulled insofar as reviewed. (See *State Div. of Human Rights v Syracuse City Teachers Assn.,* 66 AD2d 56.) In may well be that the root of the complainants' grievance lies in a regrettable and discriminatory failure to develop and adequately support a girls' sports program comparable to that offered to male students. (Cf. *Cape v Tennessee Secondary School Athletic Assn.,* 563 F2d 793, 795.) The solution, however, does not lie in compelling an increase in compensation to female coaches which is disproportionate to their workload and in contravention of a gender-neutral labor agreement fairly reached and correctly applied. Not only would such a remedy fail to advance the purposes of the Human Rights Law, but it might well divert attention from the enterprise of expanding the girls' sports program and thereby frustrate the legitimate rights of those against whom true discrimination may exist— the female student athletes. Mollen, P. J., Hopkins, Lazer and O'Connor, JJ., concur.