Gabrielli, J.
 

 On this appeal, we must determine whether the State Human Rights Appeal Board exceeded its statutory authority in setting aside a determination of the Commissioner of the State Division of Human Rights that appellants did not discriminate against the complainant on the basis of her sex. In passing upon this question, we must, perforce, decide whether the decision of the commissioner is supported by substantial evidence.
 

 In February, 1972, complainant, Dr. Alberta Gilinsky, a tenured professor at the University of Bridgeport and an alumná of Columbia’s graduate school, made formal application to Columbia’s president for an appointment to the faculty of the Department of Psychology. Subsequently, she was advised that her application had been rejected because there was no vacancy for a tenured appointment in her area of specialization. Thereafter, Dr. Gilinsky filed a complaint on September 8, 1972 with the State Division of Human Rights charging that Columbia University had discriminated against her as a woman. Following hearings before the Chief Hearing Examiner of the State Division, the commissioner held that "respondents did not discriminate against Complainant because of her sex” and made the following pertinent findings of fact:
 

 1. The Executive Committee of the Psychology Department at Columbia University decided that there was no need for a temporary or permanent appointment to a tenured position in the area of sensation and perception. Complainant was aware that the committee considered her area of specialization to be sensation and perception and members of the faculty informed her that the department had sufficient strength in that area.
 

 2. Because of operating deficits in recent years, Columbia University undertook efforts to control spending, and as part
 
 *616
 
 of its program, restricted the number and level of new faculty appointments in all departments, including the Department of Psychology. As early as 1970, it was clear to the department that vacancies on its faculty would not automatically be filled and new appointments were restricted; it was the university’s policy to replace deceased or retiring senior faculty members at the junior or nontenured level.
 

 3. The Department of Psychology made two new appointments for the 1972-1973 academic year, both at the junior level. No recommendations for tenured appointments for the 1972-1973 academic year were made and the last such appointment was made in 1970.
 

 The reviewing function of the State Human Rights Appeal Board is narrowly prescribed under subdivision 7 of section 297-a of the Executive Law which provides that "[t]he board may affirm, remand or reverse any order of the division * * * provided however that the board shall limit its review to whether the order of the division is: * * * d. supported by substantial evidence on the whole record; or e. not arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.” Thus, the authority of the appeal board in reviewing the determination of discrimination is limited by statute to the power of a court reviewing an administrative determination made after a hearing (see
 
 Matter of Mize v State Div. of Human Rights,
 
 33 NY2d 53, 57;
 
 New York Inst. of Technology v State Div. of Human Rights,
 
 48 AD2d 132, 134;
 
 State Div. of Human Rights v Syracuse Univ.,
 
 46 AD2d 1002, 1003;
 
 Long Is. R. R. Co. v New York State Div. of Human Rights,
 
 42 AD2d 857). We have summarized the scope of judicial review in the following manner: "The courts may not weigh the evidence or reject the choice made by the Board where the evidence is conflicting and room for choice exists”
 
 (Matter of Stork Rest, v Boland,
 
 282 NY 256, 267). We conclude that the determination of the commissioner was supported by substantial evidence and that the appeal board was not entitled to conclude that complainant had been discriminated against. Such determination by the board was based on a contrary view of the weight of the evidence, a standard of review which the board is not authorized to apply. The board is not empowered to find new facts or take a different view of the weight of the evidence if the commissioner’s determination is supported by substantial evidence; and a review of the commissioner’s findings and the evidence pre
 
 *617
 
 sented at the hearing amply demonstrates that they were founded upon substantial evidence. Prefatorily, we note that there is no reason to disturb the commissioner’s finding that Dr. Gilinsky first applied for a faculty position in 1972. Her prior inquiries consisted of correspondence with members of the Psychology Department to whom she expressed an interest in teaching at Columbia but who were not involved in the hiring of new faculty; other correspondence with the president of Columbia University and the chairmen of the Psychology Department consisted of offers to assist Columbia in improving its psychology program and in effectuating academic reform, and criticism of the department for lack of women in tenured positions. The conclusion of the appeal board that Dr. Gilinsky "continuously sought employment” in the Psychology Department is erroneous and may not be sustained in light of the substantial evidence supporting the commissioner’s finding that the complainant first applied for a tenured position at Columbia in 1972.
 

 Turning to the substantive findings underlying the commissioner’s determination of a lack of sex discrimination, it is manifest that the appeal board acted in excess of statutory authority by ignoring those findings and substituting its own view of the evidence in place of the commissioner’s determination. The appeal board decision states that "[Respondents’ restrictive designation of appellant’s area as 'perception’ is against the weight of the evidence”. This conclusion overlooks the evidence presented by Columbia that virtually all of Dr. Gilinsky’s research and scholarly writings concerned the area of "sensation and perception”. Dr. Gilinsky sought to convince members of the Columbia Psychology Department that her area was broader than they believed and she testified that she had taught college level courses in such diverse areas as social psychology and physiological psychology. While she had taught such courses in colleges not having a doctoral program like that at Columbia, it does not follow that she is a specialist in these areas. Columbia may legitimately prefer to appoint an individual who possessed special rather than general expertise in such areas and was recognized as an expert in them. Thus, while the record may contain conflicting evidence as to the complainant’s area of expertise, the resolution of this conflict was for the commissioner. There is also considerable support in the record for the commissioner’s further finding that the Columbia Psychology Department did not need any
 
 *618
 
 additional faculty members in the area of "sensation and perception”. It appears that at the time of complainant’s application the department had two tenured professors who were centrally involved in complainant’s area, two other tenured professors who did related work and three nontenured members of the faculty who were heavily involved in the area of "sensation and perception”. A report from the Chairman of the Psychology Department to the Dean of Graduate Faculties concerning the 1973-1974 budget for the department tersely reveals the lack of need for an additional appointment in Dr. Gilinsky’s field.
 

 Additionally, there is no infirmity in the finding that operating deficits compelled appellant Columbia University to restrict the number and level of new faculty appointments and that the effort to reduce spending included replacement of senior faculty members who retired or died with junior level appointees. It is not controverted that the only appointments made by the Psychology Department during the 1972-1973 academic year were at the junior level and that no tenured appointments were made following the 1970-1971 academic year. One of the junior appointees hired just prior to Dr. Gilinsky’s application was a woman whose major area was mathematical psychology and whose minor field was sensation and perception. It is significant that the appeal board completely overlooks these findings despite clear and uncontradicted evidence in support of them. Instead, the board recites that the death of three senior professors and the resignation of two others freed additional funds for new faculty, since the Psychology Department was authorized 13 tenured positions. Through this reasoning, the appeal board has substituted its own view of the university’s priorities in place of the judgment of university officials who are charged with operating a solvent institution and maintaining a high standard of educational excellence in the fiercely competitive milieu of higher education. In
 
 Matter of Pace Coll, v Commission on Human Rights of City of N. Y.
 
 (38 NY2d 28, 38) we observed that "[njeither the commission nor the courts should invade, and only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion and tenure, especially in institutions of higher learning” (see, also,
 
 Faro v New York Univ.,
 
 502 F2d 1229, 1232). Complainant here would have the State Division
 
 *619
 
 of Human Rights and this court conduct an inquiry into the Department of Psychology’s subjective judgment of her area of expertise and Columbia’s need for an appointment in that area. It is not the province of either the appeal board or this court to render subjective determinations as to whether Columbia University should purchase new laboratory equipment, hire junior faculty in areas it deems necessary or, in the alterntive, appoint an additional tenured professor in Dr. Gilinsky’s particular area of renown.
 

 The error of the appeal board is further compounded by its reliance on the statistical fact that, at Columbia University as a whole, there were far fewer women than men in tenured faculty positions. We cautioned in
 
 Matter of Pace Coll, v Commission on Human Rights of City of N. Y.
 
 (38 NY2d 28, 36,
 
 supra)
 
 that "a statistical predicate alone, especially where there are complicating historical reasons for a statistical bias, will not support a challenge to the employer’s employment practices just because he has no or too few members of the group allegedly excluded unlawfully (see, e.g.,
 
 State Div. of Human Rights v Kilian Mfg. Corp., 35
 
 NY2d 201, 209, 212)”. The complainant has not shown, nor has the appeal board cited, any evidence indicating that there were enough qualified women in the eligible pool or statistical population from which a senior tenured appointment, in an area in which Columbia was seeking additional faculty, could be made. Reliance on statistical proof is also rendered inconclusive and of limited value where budgetary constraints have precluded the hiring of any tenured faculty, male or female (see
 
 Faro v New York Univ.,
 
 502 F2d 1229,
 
 supra).
 
 We note, finally, that since 1972 Columbia has been operating under an affirmative action program approved by the Department of Health, Education and Welfare.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the determination of the State Human Rights Appeal Board annulled.
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, etc.