Rubin KREMER, Plaintiff,

v.

CHEMICAL CONSTRUCTION CORP., Defendant.

No. 78 Civ. 3182.

United States District Court, S. D. New York.

Sept. 20, 1979.

As Amended Oct. 2, 1979.

588

Rubin Kremer, pro se.

Layton & Sherman, New York City, by Donald Crook, New York City, for defendant.

## OPINION

SOFAER, District Judge:

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff Kremer claims he was discharged and has not been rehired by defendant Chemical Construction Corp. (Chemico) because of his religion (Jewish) and national origin. He filed a discrimina-

tion charge with the Equal Employment Opportunity Commission (EEOC) on May 6, 1976. EEOC referred the matter to the New York State Division of Human Rights (NYHRD), as mandated. 42 U.S.C. § 2000e–5(c). NYHRD concluded that plaintiff had failed to establish probable cause to believe that Chemico had engaged "in the unlawful discrimination practice complained of," and made findings that plaintiff had not been rehired for lawful reasons.[1] No express findings were made with respect to Kremer's initial discharge.[2] The papers filed by Kremer indicate, however, that the evidence of discrimination on rehiring is more substantial than the evidence advanced on the illegality of the initial discharge. The NYHRD seems therefore to have impliedly rejected plaintiff's additional claims. On November 25, 1977, the NYHRD's determination was upheld by its Appeal Board as "not arbitrary, capricious or an abuse of discretion."

Plaintiff then appealed to the Appellate Division, First Department, for a judgment pursuant to § 298 of the Human Rights Law and pursuant to CPLR Article 78. He offered all the evidence and arguments there that he has most recently advanced in this court. The decision was unanimously "confirmed" by five Justices on February 27, 1978. Plaintiff again petitioned the EEOC for relief. On May 11, 1978, the EEOC found no probable cause to believe plaintiff's claims, but it confirmed (on the usual printed form) a right to "pursue this matter further, if so desired, by filing a private action in Federal District Court within 90 days."[3] This action followed.

■ Chemico has argued from the outset of this litigation that plaintiff's Title VII claims are barred by res judicata. Defendant formally moved for dismissal on September 5, 1978, basing its argument primarily on *Mitchell v. National Broadcasting Co.*, 553 F.2d 265 (2d Cir. 1977). *Mitchell* was an action under 42 U.S.C. § 1981 by a black woman claiming racial discrimination by her employer. Like Kremer, she was denied relief by the NYHRD, unsuccessfully sought review by its Appeal Board, and then applied to the Appellate Division, First Department, which unanimously confirmed. *Mitchell* thereafter applied to the EEOC. After the EEOC found no probable cause, she sued in federal court under 42 U.S.C. § 1981. The only significant difference, therefore, between *Mitchell* and the present case is that plaintiff Kremer sues in the federal courts under Title VII, whereas Mitchell sued under § 1981.

The Second Circuit held in *Mitchell* that a federal action under § 1981 was barred under principles of res judicata. In so holding, the court found it necessary to distinguish its earlier decision in *Voutsis v. Union Carbide Corp.*, 452 F.2d 889 (2d Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972), which held that resort to a state agency to test a racial discrimination claim does not bar a subsequent federal suit under Title VII.[4] Because the plaintiff in *Mitchell* had gone one step beyond the state agency level by seeking limited review in the state courts by way of an Article 78 proceeding, a majority of the Second Circuit panel concluded that the state decision

---

1. The determination recited:

   The record shows that this complainant was not rehired by the respondent employer because one employee with greater seniority was chosen.

   The other person that was rehired, [sic] filled a lesser position than that held by complainant.

   Complainant's creed, or age, was not a factor in these selections.

   The complaint is therefore ordered dismissed, and the file is closed.

   "Determination after Investigation," NYHRD, April 28, 1977, Exhibit C, Defendant's Motion to Dismiss, Sept. 5, 1978.

2. Id., Exhibit C.

3. Id., Exhibit H.

4. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court cited the *Voutsis* decision with approval, noting that "[m]ost courts have recognized that the doctrine of election of remedies does not apply to suits under Title VII", at 49 n. 11, 94 S.Ct. at 1020. *See also Cooper v. Philip Morris, Inc.*, 464 F.2d 9 (6th Cir. 1972).

should be accorded the same res judicata effect it would have in the New York State courts.[5]

The plaintiff in *Mitchell*, though suing under § 1981, argued that to apply res judicata to her case would conflict with the legislative scheme of Title VII. But the court disagreed. The federal interest in encouraging deferral of civil rights claims to state adjudication applied only, the court found, to state agencies where conciliation of civil rights claims is attempted. "Once review of a state agency determination is sought in the state courts, however, these considerations disappear." 553 F.2d at 275. This result, the court stated, allows state agencies to apply their expertise in discrimination claims and at the same time affords a federal remedy to claimants who choose to sue in the federal courts rather than seek review in the state courts. *Id.* at 265.

Judge Feinberg dissented in *Mitchell*. He concluded that if res judicata applied in an action under 42 U.S.C. § 1981, it should also apply to a claim under Title VII, a result he found unacceptable. He reasoned that, since Congress had provided for a *de novo* hearing of all Title VII cases in the federal courts after both state and federal agency determinations, it made no sense to deprive a complainant of *de novo* review because he or she pursued an additional, limited review in the state courts. He noted that Congress had provided in civil rights cases for considerable duplication and overlapping of remedies, and that this legislative purpose should not be overridden by judicial resort to the normal but inapposite policy against repetitious litigation. *Id.* at 277–80; *see* 28 U.S.C. § 1738.

Despite *Mitchell*, defendant's motion to dismiss in this case was denied by Judge Lawrence W. Pierce on December 7, 1978.[6] Judge Pierce essentially adopted Judge Feinberg's reasoning in *Mitchell*, but concluded that the specific statutory grant of *de novo* federal review in Title VII justified distinguishing, for res judicata purposes, cases under Title VII from cases under the other civil rights statutes. He agreed also with Judge Whitman Knapp's opinion in *Benneci v. Department of Labor*, 388 F.Supp. 1080 (S.D.N.Y.1975). To apply res judicata to Title VII cases, Judges Pierce and Knapp concluded, would defeat the general purposes of the statutory scheme as construed by a unanimous Supreme Court in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). "Such a holding would impliedly restrict the express provision for a second independent hearing to those instances where state proceedings had been terminated without state court review. There being no limitation of this nature on the availability of a *de novo* hearing imposed by Congress, the insertion of a qualification by judicial fiat is unwarranted." *Kremer v. Chemical Construction Co.*, 464 F.Supp. 468, 473 (S.D.N.Y.1978).

On June 12, 1978, however, the Second Circuit extended the *Mitchell* rule to Title VII cases. In a *per curiam* opinion, it held that res judicata would bar a Title VII claim where the plaintiff had previously sought state court review on the same question presented to the federal courts. The panel saw "no reason to distinguish between Section 1981 and Title VII for res judicata purposes." Without discussion of the *de novo* review requirement of Title VII, *Mitchell* was deemed to control. "The crucial factor is that appellant chose to submit her case to the state *courts* for review and she cannot now relitigate the same issues in federal court." *Sinicropi v. Nassau County*, 601 F.2d 60 at 62 (2d Cir. 1979). (Emphasis in original.) Judge Feinberg, who dissented in *Mitchell*, agreed its

---

5. Because *Mitchell* sought relief in the federal court on the same grounds as in the state court, the court reasoned that she had had her "day in court." The fact that no opportunity for a formal evidentiary hearing had been afforded did not, in the court's view, preclude application of res judicata so long as there was an identity of issues and the plaintiff had had the

right to appear and an opportunity to be heard. 553 F.2d at 271.

6. Further indication of the Second Circuit's attitude on repetitious litigation was provided by the intervening decision in *Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978), applying collateral estoppel in an action under 42 U.S.C. § 1983.

reasoning required dismissal of Title VII cases, as he had predicted.

■ *Sinicropi* permits no choice but to dismiss plaintiff's complaint in this case on grounds of res judicata. Plaintiff urges what he regards as distinguishing features: perfunctory treatment by the NYHRD and an order by the Appellate Division that misleads by reciting that plaintiff appeared and argued in his behalf. These deficiencies, however, are less substantial than— though similar to—the deficiencies raised by the plaintiff in *Mitchell.* See 553 F.2d at 268 (lack of witnesses, no cross-examination, no counsel). Nor is it significant that the NYHRD's opinion expressly refers only to the plaintiff's claim based on defendant's failure to rehire him; the papers indicate that both the agency and the state court were presented with all aspects of plaintiff's claim of religious discrimination— identical to the claim presented in this court—and they denied relief.

■ To submit to *Mitchell* and *Sinicropi,* however, is not to agree with them. The *Mitchell* majority's conclusion that Title VII's *de novo* review is satisfied by a combination of an agency finding of no probable cause coupled with Article 78 review seems fanciful. No amount of judicial explication can alter the reality that a litigant who pursues his civil rights claim in a state court with limited powers of review loses his statutory right to full review in the federal courts. This disparity in remedial opportunity is merely obfuscated by the assertion that agency consideration of probable cause coupled with limited Article 78 review is equivalent to a summary judgment proceeding in federal court and thus satisfies the *de novo* review requirement. It is well settled that in considering a Title VII claim a federal district court is not bound by administrative findings of fact. *Chandler v. Roudebush,* 425 U.S. 840, 844–45, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). A Title VII trial may therefore encompass anything reasonably within the scope of an EEOC investigation. *See* Comment, *T'was a Nibble Not a Bite: Res Judicata and Section 1981—Mitchell v. National Broadcasting*

*Co.,* 53 N.Y.U.L.Rev. 187, 204–05 (1978). Whether the district court decides the claim on a motion for summary judgment or after a full trial, it is entitled to request additional affidavits and evidence and, if necessary, to hold an evidentiary hearing. *See generally* Wright & Miller, *Federal Practice and Procedure: .Civil* § 2721 (1973). By contrast, the New York Appellate Division, like most appellate courts, is limited to the record of facts gathered and evidence presented in the agency proceedings. Comment, *State Appellate Court Judgment on Employment Discrimination is Res Judicata in Subsequent Federal Action Under Section 1981 of the Civil Rights Act of 1866,* 62 Minn.L.Rev. 987, 1006 (1978). As a result, the appellate court determination is subject to all the procedural infirmities of the administrative proceeding.

■ Even if state agency and appellate court review were considered sufficiently analogous to federal summary judgment in the abstract, res judicata would still appear an inappropriate mechanism to bar Title VII claims in the federal courts. As the Second Circuit stated in *Voutsis, supra,* "[a] federal claim allows the district court to conduct a 'full scale inquiry into the charged unlawful motivation in employment practices' ", 452 F.2d at 893, *quoting Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 715 (7th Cir. 1969). Such a full scale inquiry will often call for a trial on the merits, including independent fact-finding by the federal court. The *Mitchell* majority correctly argued, of course, that a federal court is empowered to use a summary judgment procedure in all cases where no genuine issue of *material fact* is presented; in such cases the issues considered in the federal review would be quite similar to the issues considered when a state court "confirms" as reasonable an agency's dismissal for lack of probable cause. But there is a critical difference between the authority of the New York and federal courts in dealing with Title VII issues. A federal court is *permitted* to make a summary judgment disposition of an employment discrimination case. By contrast, the New York Appellate

Division in an Article 78 proceeding is *restricted* to using a proceeding similar to summary judgment; it has no authority to determine whether summary judgment is, in a given case, preferable to a full judicial trial on the merits.[7] For this reason, the issues presented before the state court in an Article 78 proceeding and those before the federal court under Title VII are necessarily dissimilar, thus making the application of res judicata inappropriate. Given the express mandate in Title VII for federal *de novo* review, the federal court would appear obliged to determine independently the nature and extent of review necessary to protect a claimant from employment discrimination. *Mitchell* and *Sinicropi* foreclose the federal courts from considering this important question.[8]

A primary concern of the *Mitchell* majority was the need to enhance comity between the state and federal courts. Yet, as the *Mitchell* majority concedes, comity in our federal system must always begin with a proper implementation of our national legislature's will. Otherwise, the concept might be used to create a preference for adjudicating at least some types of federal claims in state rather than federal court. Where Congress has "long evinced a general intent to accord parallel or overlapping remedies against discrimination," *Alexander v. Gardner-Denver Co., supra,* 415 U.S. at 47, 94 S.Ct. at 1019, a preference for state resolution of such claims seems especially inappropriate. Furthermore, comity has generally been understood to require deference to state decisions based on the same scope of review applied in comparable federal proceedings. It seems a strange version of comity to require a federal court to relinquish an obligation to grant *de novo* review on the ground that a state court has granted limited review of a state agency decision. One wonders, moreover, why comity will be served if, as seems likely, individuals with civil rights claims will strive to avoid the state courts in order to preserve their right to a federal forum.

The *Mitchell* majority also wrote of the "interests of judicial husbandry," and "the

7. *See generally* Comment, *Civil Rights—Civil Procedure: State Appellate Court Judgment on Employment Discrimination is Res Judicata in Subsequent Federal Action Under Section 1981 of the Civil Rights Act of 1866, supra,* at 988 nn. 5 & 6. The Appeal Board reviews dismissals for lack of probable cause only to determine whether the action of the NYHRD was "arbitrary and capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." *Mayo v. Hopeman Lumber & Mfg. Co.,* 33 A.D.2d 310, 313, 307 N.Y.S.2d 691, 694, *appeal dismissed,* 26 N.Y.2d 962, 311 N.Y.S.2d 5, 259 N.E.2d 477 (1970). Even if the Board determines that there is a genuine factual dispute over a key issue, it may not reverse the NYHRD's dismissal for lack of probable cause. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. State Div. of Human Rights,* 48 A.D.2d 391, 370 N.Y.S.2d 96 (1975) (per curiam). Nor is it empowered to find new facts. *See State Div. of Human Rights v. Columbia Univ.,* 39 N.Y.2d 612, 616, 385 N.Y.S.2d 19, 21, 350 N.E.2d 396, 398 (1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977). The Appellate Division's scope of review in an Article 78 proceeding has been held to be no broader than that of the Appeal Board. *See Mize v. State Div. of Human Rights,* 33 N.Y.2d 53, 57, 349 N.Y.S.2d 364, 367–68, 304 N.E.2d 231, 233 (1973). Thus, in reviewing the state agency determinations, it seems that the Appel-

late Division can at most reverse and remand for a hearing or further investigation by the agency. *See Mitchell, supra,* 553 F.2d at 272 n. 9, *citing Mayo v. Hopeman Lumber & Mfg. Co., supra.*

In justifying application of res judicata in *Mitchell,* the majority apparently relied on the fact that Second Circuit courts have on occasion given res judicata effect to Article 78 judgments. 553 F.2d at 272 n. 9. None of the cases cited by the majority, however, involved the resolution of employment discrimination or similar claims where Congress expressly provided for *de novo* federal court review.

8. This court concedes that it may not always be inappropriate for a federal court to give res judicata effect to a state court's disposition of an employment discrimination claim. As two commentators have persuasively argued, res judicata effect might properly be accorded when the state proceedings included a trial on the merits, or at least involved summary disposition where there was a possibility of full trial on the merits. Comment, *Civil Rights—Civil Procedure: State Appellate Court Judgment on Employment Discrimination is Res Judicata in Subsequent Federal Action Under Section 1981 of the Civil Rights Act of 1866, supra,* at 1012; Comment, *T'was a Nibble Not a Bite: Res Judicata and Section 1981, supra,* at 214.

equity of protecting opposing parties . . . from vexatious duplicative litigation," 553 F.2d at 276–277, *quoting from Thistlewaite v. City of New York*, 362 F.Supp. 88, 92 (S.D.N.Y.1973), *aff'd*, 497 F.2d 339 (2d Cir.), *cert. denied*, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974). Even assuming an adequate basis exists for judicially revising the apparent legislative judgment as to where the balance should be struck on these interests, do considerations of judicial administration and equity truly support the application of res judicata in Title VII cases?

Title VII plaintiffs will still initially seek relief before the NYHRD because the federal statute requires them to do so. Some will still seek review in the state courts on state law grounds, carefully avoiding any mention of their federal claims even though they are before a tribunal competent to review those claims. Most will avoid the state courts entirely, thus encouraging further deterioration of the state agency process due to much less frequent state court supervision. Furthermore, by discouraging state court review of agency decisions, *Mitchell* and *Sinicropi* may well serve to increase the number of discrimination cases brought in the federal courts. Those plaintiffs who, until *Mitchell* and *Sinicropi*, were satisfied with the handling of their claims by the state courts and sought no federal review will, after those decisions, pursue their claims in federal courts at the outset.[9] Federal courts who hear these claims will no longer have the benefit of state court decisions, which have often been of assistance.

As for the equitable consequences of *Mitchell* and *Sinicropi*, they may create far

more unfairness than they avoid, and proper alternative means for avoiding vexatious, duplicative litigation seem available. First, it seems clear that many civil rights claimants have been misled by prior court decisions, such as *Voutsis*, into believing they could seek limited state court review without losing access to the federal courts. Indeed, in cases such as the present one, the state and federal agencies handling civil rights claims have uniformly assumed that federal review remained available under Title VII irrespective of prior proceedings. For example, after Mr. Kremer had gone to the state agency, sought state review, and then federal agency consideration, the EEOC issued a letter stating that he had a "right to sue" in federal court. There seems little equity in imposing a rule of forfeiture upon applicants such as Kremer under circumstances where even the expert agencies could not have anticipated one. Granted that the unfairness of applying res judicata to Title VII cases is lessened with respect to complainants who seek state court review after *Sinicropi*; yet the fact remains that the individuals who sought review in state court prior to *Sinicropi* have lost their right to federal court consideration of an important federal claim without notice or fault.[10]

The *Mitchell* and *Sinicropi* decisions will also have inequitable results in future cases. Undoubtedly some individuals will continue to seek review of their federal claims in state courts. These will generally be the uninformed parties who are commonly seen as pro se plaintiffs in civil rights cases. Whatever increase is attained in judicial efficiency through finalizing state court de-

---

**9.** *Cf. Alexander v. Gardner-Denver Co., supra,* where the Supreme Court expressed similar concerns in holding that federal courts should not give res judicata effect to state arbitration determinations. The Court noted that to hold otherwise

> might adversely affect the arbitration system as well as the enforcement scheme of Title VII. Fearing that the arbitral forum cannot adequately protect their rights under Title VII, some employees may elect to bypass arbitration and institute a lawsuit. The possibility of voluntary compliance or settlement

of Title VII claims would thus be reduced, and the result could well be more litigation, not less. 415 U.S. at 59, 94 S.Ct. at 1025.

**10.** The unfairness of applying *Sinicropi* to plaintiffs such as Kremer was brought home to this court when Mr. Kremer was told his complaint had to be dismissed. He was obviously shocked to discover that he had no right to federal review. He complained that he had gone through all the procedures he had been told to go through, but had never obtained a hearing on his claim.

cisions is likely to be at the expense of these plaintiffs who will not know they should avoid our sister courts. On the other hand, civil rights defendants will not really be spared vexatious, duplicative litigation by *Mitchell* and *Sinicropi*. Knowledgeable plaintiffs need dispense with only one of the several stages of litigation available to them, one which to defendants must be the least burdensome stage of all, i. e., a limited review in which the state agency joins the defendant in opposing the plaintiff's contentions.

Greater relief for vexed defendants in Title VII cases is certainly an objective the Circuit Court should strive to secure. Cases brought by individual plaintiffs seem particularly burdensome, and most often meritless. Devices are potentially available, however, that would be more effective in deterring vexatious suits and fairer to plaintiffs than applying the res judicata doctrine. Two particularly promising measures would be to encourage federal district judges to use their power to grant summary judgment on the merits, and to permit them greater authority in frivolous cases to grant costs and counsel fees against the losing plaintiff.

 The right to a *de novo* review should not exempt civil rights claimants from the usual requisites of federal litigation, including the need to allege facts sufficient to create a genuine issue of fact as well as a legal theory upon which relief may be granted. We are perhaps too reluctant to give full weight at the pleading stage to the practical reality that, in light of the plaintiff's burden of proof, discrimination cases based essentially on the plaintiff's feelings or suspicions often fail to raise issues of fact worth litigating.[11] Indeed, greater use of summary judgment in employment discrimination cases finds support in the *Mitchell* decision itself. If the court there was willing to give full faith and credit to a state procedure which merely resembles federal summary judgment, it should be

even more prepared to affirm a federal district court's summary disposition of a Title VII claim, especially since the federal court is free to consider the propriety of a full trial on the merits.

 We naturally resist imposing costs and fees on individuals who already carry with them, however unjustifiably in the law's eyes, a feeling of having been greatly wronged. Yet it is here that the courts must show courage and ingenuity. Instead of precluding suits under judicial doctrines such as res judicata, we should use statutorily granted powers to tax costs and fees in cases we have concluded are meritless. *See* 42 U.S.C. § 2000e–5(k). The Supreme Court recently confirmed the propriety of awarding attorney's fees to a Title VII defendant who prevails on the merits. *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Although the Court concluded that a more stringent standard should apply to prevailing defendants than would apply to prevailing plaintiffs, the standard articulated by the Court for prevailing defendants seeking attorney's fees is far less stringent than many lower federal courts had assumed. The Supreme Court stated: "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700. With this new standard, the assessment of attorney's fees is now available as a potentially effective device for protecting defendants from the burdens of meritless civil rights claims.

The motion to dismiss is granted, and the complaint is dismissed, without costs to either side.

SO ORDERED.

---

11. One commentator persuasively argues that, where the moving party does not have the trial burden of proof, the summary judgment evidentiary standard should be relaxed. Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745 (1974).