■  STATE DIVISION OF HUMAN RIGHTS, Respondent, v UNIVERSITY OF ROCHESTER, SCHOOL OF MEDICINE AND DENTISTRY, et al., Petitioners.—Petition unanimously granted, without costs, order of appeals board annulled and order of State Division of Human Rights reinstated. Memorandum: In April, 1969 complainant, who is black, was hired as an instructor in psychiatry at the School of Medicine and Dentistry and also as a psychiatric social worker at the University of Rochester's Strong Memorial Hospital. In October, 1974 he was promoted to the position of Assistant Professor of Psychiatry and named a Senior Psychiatric Social Worker. The position of Assistant Professor of Psychiatry was nontenured and was for a three-year period expiring September 30, 1977. The established procedure of the university for such an appointment provided that one year prior to the expiration of the three-year term, the individual so appointed would receive a notification of termination or a renewal of faculty status. This procedure was complied with and the review process of complainant's performance began in May, 1976. His superiors in both the psychiatric department and the social work division participated. On August 10, 1976 complainant was notified that due to his failure to meet tenure standards in the area of scholarship, initiative and professional role his appointment would be terminated on September 30, 1977. On August 12, 1976 complainant filed a complaint with the State Division of Human Rights alleging that he had been unlawfully discriminated against in his employment because of his race and color. The division undertook an extensive investigation of the complaint, interviewing the numerous people in the departments in which complainant was employed. The division was also provided with complainant's personnel file, employment and promotion data for other psychiatric and social work personnel and a copy of the School of Medicine and Dentistry faculty and tenure regulations. Throughout the investigation, including the year 1977, the division requested and received from the university additional documentation, which was made available to complainant for his examination, comment and discussion, all of which complainant utilized. On November 28, 1977 the regional director of the division deter-

mined that the division had jurisdiction and found that there was no probable cause to believe that petitioners had engaged in the alleged discriminatory practice. Specifically the division found that it was the professional judgment of the petitioners, unrelated to race and color, that complainant should be terminated, that the evaluation of the performance of complainant was conducted in accordance with the standard procedures of the university and that complainant had failed to produce sufficient evidence to support a belief that he was in any way unlawfully discriminated against because of his race and color. Complainant filed an appeal with the State Human Rights Appeal Board which vacated the division's determination and remanded the matter for further proceedings, holding that the division acted arbitrarily and capriciously in failing to hold a confrontation conference and failing to give enough weight to the racism allegations made by one William Stewart, a black coworker of complainant, in an interview with a senior field representative for the division. This was but one of numerous interviews conducted by the same field representative and was in very general and conclusory terms. The powers of the State Human Rights Appeal Board are contained in section 297-a of the Executive Law which in pertinent part provides: "7. The board may affirm, remand or reverse any order of the division or remand the matter to the division for further proceedings in whole, or with respect to any part thereof, or with respect to any party, provided however that the board shall limit its review to whether the order of the division is: * * * d. *supported by substantial evidence on the whole record; or* e. *not arbitrary, capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.* It is clear that the statute contemplates preliminary investigation, conference and action by the Division, *and if the complaint is not dismissed or a conciliation agreement is not reached,* then respondents must be given an opportunity to answer and a public hearing must be held. Recognition of this procedure is important in construing section 297-a (subd. 7, pars. d, e), quoted above. The substantial evidence test contained in paragraph d relates to the determination by the Division upon the record after a public hearing. The test as to whether the action of the Division is arbitrary, capricious, etc. contained in paragraph e relates to a determination by the Division prior to a hearing, as was made in this case. Thus, the question presented to the Appeal Board was whether the determination of the Division was arbitrary, capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." (Emphasis supplied.) *(Mayo v Hopeman Lbr. & Mfg. Co.,* 33 AD2d 310, 313; and see *State Div. of Human Rights v New York State Drug Abuse Control Comm.,* 59 AD2d 332.) A consideration of the entire record in this case does not warrant a finding of racial or color discrimination and the determination of the State Division of Human Rights should be reinstated. Indeed, it appears that the decision of the division has had no effect on complainant's appointment as a part-time lecturer in the Community Services Undergraduate Program of the University College, which continues to this date. The Human Rights Appeal Board may not substitute its judgment for that of the division or the employer *(Matter of New York Tel. Co. v Wethers,* 36 AD2d 541, affd 30 NY2d 791; see, also, *Long Is. R. R. Co. v New York State Div. of Human Rights,* 42 AD2d 857). There does not appear to be anything in this record to justify the appeal board's action in remanding this case for a further investigation into the existence of probable cause. "A confrontation conference is not mandated by statute but is authorized under the regulations as an aid to eliminate the discriminatory practice complained of during the investigatory stage (9

NYCRR 465.4 [b]). Such conferences are generally held as a matter of routine." *(State Div. of Human Rights v Mecca Kendall Corp.,* 53 AD2d 201, 203.) In the instant case however, unlike *Kendall (supra)* the decision of the appeal board made no finding or mention that "many questions of fact remain unsolved". On the contrary, the record discloses that all material, interviews and exhibits were made available to the complainant who in fact answered and acted upon these materials in the proceedings before the division. The appeal board decision is based solely upon the interview with William Stewart, which was conducted at the request of complainant. No reference is made to the very extensive, if not overwhelming, other documentation contained in the record. In vacating the determination of the division, the appeal board has unlawfully substituted its judgment for that of the division. *(State Div. of Human Rights v New York State Drug Abuse Control Comm., supra.)* Finally, in reviewing actions taken by academic administrators, the language of the Court of Appeals in *State Div. of Human Rights v Columbia Univ. in City of N. Y.* (39 NY2d 612, 618) should be noted: "The appeal board [in setting aside a determination of the Commissioner of the State Division of Human Rights] has substituted its own view of the university's priorities in place of the judgment of university officials who are charged with operating a solvent institution and maintaining a high standard of educational excellence in the fiercely competitive milieu of higher education. In *Matter of Pace Coll. v Commission on Human Rights of City of N. Y.* (38 NY2d 28, 38) we observed that '[n]either the commission nor the courts should invade, and only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion and tenure, especially in institutions of higher learning' (see, also, *Faro v New York Univ.,* 502 F2d 1229, 1232)." (Executive Law, § 298.) Present—Simons, J. P., Hancock, Jr., Schnepp, Doerr and Moule, JJ.