Franklin BROWN, Plaintiff-Appellant,

v.

**J.I. CASE COMPANY, Defendant-Appellee.**

No. 86–1077.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1986.

Decided March 12, 1987.

Veron J. Petri, Indianapolis, Ind., for plaintiff-appellant.

George A. Brattain, Marshall, Batman, Day, Swango & Brattain, Terre Haute, Ind., for defendant-appellee.

Before WOOD, COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The plaintiff-appellant, Franklin Brown, appeals a grant of summary judgment in favor of the defendant-appellee, J.I. Case Company, that his claims of employment discrimination are barred by 28 U.S.C. § 1738 and the doctrine of *res judicata*. We affirm.

## I.

This case has a long history in state administrative proceedings, state court, and in federal courts for some eleven years. The genesis of this case was on or about March 13, 1975, when Franklin Brown filed a complaint with the Indiana Civil Rights Commission ("ICRC" or "Commission") alleging that the J.I. Case Co. had committed acts of racial discrimination.[1] Brown alleged in his complaint that while in the employment of the defendant J.I. Case he had been threatened, harassed, and made the subject of racial slurs by fellow employees—behavior which the defendant allegedly took no substantial action to prevent.[2]

On October 24, 1975, the appellant filed two more complaints with the ICRC alleging retaliation for having filed the initial racial discrimination charge. On January 30, 1976, the appellant filed his fourth and final complaint against J.I. Case with the

---

**1.** J.I. Case is a Delaware corporation operating a manufacturing facility in Terre Haute, Indiana.

**2.** Among the plaintiff's allegations are that he received threatening notes from other employees which read: "I'll get you, nigger." The plaintiff also alleged that one employee told him in a threatening manner that he possessed a 30–30 firearm and could "shoot straight." Subsequently Brown found a 30–30 bullet on his desk and a note that said "Fuck that nigger." The plaintiff also alleged that a dead snake was placed in his desk.

ICRC again alleging retaliation for having filed the initial racial discrimination charge.[3]

On January 30, 1976, the ICRC issued a temporary emergency order in favor of the plaintiff.[4] On February 19, 1976, a hearing was held before the ICRC in which the plaintiff, represented by counsel, had a full opportunity to present testimony and exhibits. On February 20, 1976, the ICRC made the temporary order of January 30, 1976, final ordering J.I. Case "[t]o make constant and sincere efforts to alleviate the hostile racial climate within the Terre Haute plant ..." *Brown v. J.I. Case,* No. 07519 (ICRC Feb. 20, 1976).

On March 9, 1976, J.I. Case appealed the ICRC's final order to the Superior Court of Vigo County, Indiana. The Vigo Superior Court noted that the Commission had conducted a hearing, but that the Commission's order of February 20, 1976, failed to set forth any findings of fact. The Vigo Superior Court further found that there was "a complete absence of any substantial, reliable, and probative evidence in the record to support a finding which would support the Commission's order."[5] *J.I. Case v. Brown,* No. S–C–76–397, Slip Op. at 6 (Vigo Superior Ct. Feb. 16, 1977). On February 16, 1977, the Superior Court remanded the proceedings to the ICRC with directions to dismiss the proceedings "absent additional probative evidence supportive of the changes [sic] made." *Id.*

Brown appealed the Superior Court's decision to the Indiana Court of Appeals. The Court of Appeals issued an order holding that, since the records of proceedings were not timely filed by Brown, J.I. Case's motion to dismiss the action was granted.

On September 10, 1980, the Commission held a pre-hearing conference with the parties and their counsel present resulting in the Commission allowing Brown to consolidate his four complaints and further ordering him to file a "Specification of Details" within forty-five days as to what "additional evidence supportive of the charges made" could be offered at a hearing. On November 19, 1980, Brown's counsel filed a motion to extend the time for compliance with the September 10, 1980, order until November 26, 1980. As of December 2, 1980, the plaintiff had failed to file any specification or other pleading in compliance with the court order for additional evidence supportive of the charges he

---

**3.** The basis of the three retaliation complaints were continuing harassment and a demotion.

**4.** The Temporary Emergency Order provided: "Being duly advised by the petition for temporary emergency order filed by Complainant and finding that an emergency exists and that Complainant would suffer irreparable harm unless a Temporary Emergency Order should be and hereby is issued."
*Brown v. J.I. Case,* No. 07519 (ICRC Jan. 30, 1976).

**5.** In its opinion under the heading "FINDINGS OF FACT AND CONCLUSIONS OF LAW," the Vigo Superior Court stated:
\* \* \* \* \* \*
"9. The February 20, 1976 order of the Commission contained no findings of fact of any kind.
10. Complainant has communicated to the Company's Management about various threats and racial slurs allegedly directed against him and others. The Company has actively sought to solve such problems by disciplining those responsible for objectable [sic] conduct; repainting restroom walls; instituting various investigatory programs; re-affirming Article

34 of its Plant Work Rules as it relates to racial slurs and conduct; and conducting numerous meetings discussing possible problem areas.
11. Complainant has repeatedly hampered management's efforts to alleviate the aforementioned problems by refusing to cooperate fully in the case of one John Anderson where Complainant left the plant at the time of the incident without permission of his supervisors and by refusing to attend a meeting in the Manager of Manufacturing's office in which the alleged threats on Complainant's life were to be discussed.
12. The Company has responded to Complainant's allegation vigorously and with understanding as well as, on numerous occasions, not instituting disciplinary procedures against Complainant that were clearly warranted.
\* \* \* \* \* \*
17. The transcript of proceedings shows a complete lack of retaliatory purpose in suspending Complainant and offering of the alternate position in quality control."
*J.I. Case v. Brown,* No. S–C–76–397, Slip Op. at 3–4 (Vigo Superior Ct. Feb. 16, 1977).

filed,[6] thus the ICRC Hearing Officer recommended that Brown's complaints be dismissed pursuant to the order of the Vigo Superior Court. Since neither the plaintiff nor the defendant filed any objections to the dismissal recommendation within the ten-day period allowed, (Indiana Code ("IC") 4–22–1–12 and 910 IAC 1–12–1–(B)), the Commission on January 16, 1981, adopted the Hearing Officer's recommendation to dismiss as final. The Commission denied Brown's motion for reconsideration of its order of dismissal.

On July 27, 1981, Brown received a Notice of Right-to-Sue Letter from the Equal Employment Opportunity Commission ("EEOC")[7] which stated that his Title VII charge filed with the Commission had been dismissed because "no reasonable cause was found to believe that the allegations made in [Brown's] charges are true ..." On October 23, 1981, some eighty-eight days after the plaintiff had received his Notice of Right-to-Sue Letter, he filed four documents with the United States District Court for the Southern District of Indiana (Terre Haute Division) consisting of: (1) an Affidavit of Financial Status in Civil Actions, (2) a Financial Affidavit in Support of Request for attorney, (3) a Pauper Affidavit and Order, and (4) his Notice of Right-to-Sue.

On August 9, 1983, after the district court denied Brown's request to proceed *in forma pauperis*, he filed a *pro se* complaint (September 9, 1983). The district court decided that the documents filed by the plaintiff on October 23, 1981 did not constitute the filing of a complaint and thus dismissed the action for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The district court also rejected Brown's contention that the filing of an application for appointment of counsel accompanied by a Notice of Right-to-Sue Letter tolled the statutory ninety-day filing period provided in 42 U.S.C. § 2000e–5(f)(1).

The plaintiff appealed the district court's order dismissing his complaint, and on January 17, 1985, this Court reversed, *Brown v. J.I. Case Co.*, 756 F.2d 48 (7th Cir.1985), stating that:

"The remedial purpose of Title VII and the special equitable circumstances raised by a request for appointment of counsel justify a general rule allowing a request for appointed counsel combined with presentation of a Notice of Right-to-Sue to toll the running of the ninety-day period until the court acts upon the counsel request."

*Id.* at 50.

On May 6, 1985, after the case was returned to the trial court, J.I. Case filed a motion for summary judgment asserting that since there was no genuine issue of material fact in dispute that it was entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of its motion J.I. Case claimed that the doctrine of *res judicata* and 28 U.S.C. § 1738 applied. J.I. Case argued that the subject matter and issues raised by Brown's complaint had been litigated previously before separate tribunals (the ICRC and the Vigo Superior Court), thus Brown was barred from relitigating his claims. On June 20, 1985, Brown filed a memorandum opposing J.I. Case's motion for summary judgment asserting that J.I. Case was guilty of unreasonable delay in not timely asserting the doctrine of *res judicata*. On December 12, 1985, the district court granted J.I. Case's motion for summary judgment finding (1) that 28 U.S.C. § 1738 and *res judicata* barred the plaintiff from further litigating his claims and (2) that the defendant's use of the doctrine *res judicata* as the basis for its summary judgment motion was not untime-

---

**6.** Brown also failed to request any further extension of time.

**7.** Title 42, §§ 2000(e)–(5)(f)(1) and (3), provide that if the EEOC concludes that there is no reasonable cause to believe that a charge is true, then it must dismiss the charge and issue the complainant a statutory Right-to-Sue Letter.

Where the EEOC has not filed a civil action against the employer, it must, if requested, issue a Right-to-Sue Letter within 180 days after the charge was filed. Within 90 days of receiving the Right-to-Sue Letter, the complainant may file a civil action in federal district court against the party named in the charge.

ly and not prejudicial to the plaintiff. *Brown v. J.I. Case*, TH 83–212–C, Mem. Op. (S.D.Ind. Dec. 12, 1985).

On appeal Brown raises two issues: (1) whether the district court properly found the doctrine of *res judicata* and 28 U.S.C. § 1738 precluded him from pursuing his Title VII action in federal court; and (2) whether the district court abused its discretion in allowing J.I. Case to file its motion for summary judgment premised on the doctrine of *res judicata*.

## II.

■ Title VII and the preclusive effect to be given decisions from state courts and administrative proceedings has been the subject of two recent Supreme Court decisions: *University of Tennessee v. Elliott*, —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)[8] and *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). In *Kremer*, the Supreme Court stated that 28 U.S.C. § 1738[9] "[r]equires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." 456 U.S. at 466, 102 S.Ct. at 1889 (footnote omitted).

Brown asserts that the trial court erred in finding that his Title VII claim was barred by the doctrine of *res judicata* and 28 U.S.C. § 1738. His primary argument is that the Supreme Court's decision in *Kremer* compels the reversal of the district court's decision.

In *Kremer*, the plaintiff, Rubin Kremer, filed a Title VII discrimination suit against his employer with the EEOC who in turn referred the case to the New York Division of Human Rights, the agency responsible for administering New York's employment discrimination laws. The New York State Division of Human Rights rejected Kremer's discrimination claim—the judgment of rejection was affirmed at the agency appellate level and again by the reviewing state court. Kremer next brought a Title VII action in federal district court and his employer raised the doctrine of *res judicata* as a defense. The district court dismissed the complaint on grounds of *res judicata*, 477 F.Supp. 587 (S.D.N.Y.1979), and the Second Circuit affirmed. 623 F.2d 786 (2d Cir.1980). The Supreme Court affirmed, holding that under 28 U.S.C. § 1738 the New York State Court's judgment affirming the New York State Division of Human Rights finding of no *discrimination* was entitled to preclusive effect.

Brown argues that the ICRC Order of January 16, 1981, cannot be given preclusive effect because it was "unreviewed." He asserts that footnote 7 of *Kremer* commands that an unreviewed determination by a state agency does not preclude federal court litigation. Footnote 7 of *Kremer* states:

"Since it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts."

456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7.

Based on footnote 7, Brown asserts that since the ICRC's January 16, 1981 order (employment discrimination claim) dismissing his complaint was not appealed and thus unreviewed, he contends this entitles him to a *de novo* review of his Title VII claim in federal court.

---

8. *Elliott* was decided after the briefing and arguments of this case. Although it is instructive in amplifying Title VII it is inapposite to the instant case since at no time did any state court become involved in or review any part of the case.

9. In the Act of May 26, 1790, ch. 11, 1 Stat. 122, Congress required all federal courts to give such a preclusive effect to state court judgment "as they have by law or usage in the courts of the state from [which they are] taken." In essentially unchanged form, the Act, now codified at 28 U.S.C. § 1738 provides that:

[t]he ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State....

In its recent decision in *University of Tennessee v. Elliott*,[10] the Supreme Court discussed its decision in *Kremer:* "While *Kremer* teaches that final state court judgments are entitled to full faith and credit in Title VII actions, it indicates that unreviewed determinations by state agencies stand on a different footing." 106 S.Ct. at 3223. In deciding whether *res judicata* and 28 U.S.C. § 1738 are applicable to the present case we must decide whether the Vigo Superior Court (1) "reviewed" the proceedings of the ICRC and (2) whether its decision was a final judgment entitled to full faith and credit.

On February 16, 1977, the Vigo Superior Court, after reviewing the ICRC's order in favor of Brown, entered a judgment finding a total lack of "any substantial, reliable, and provative evidence" in the record in support of the order. The judgment of the Vigo Superior Court provided in relevant part:

"Based upon the entire record herein, and for the reasons indicated, the Petition for Review is granted and the February 20, 1976 Order of the Commission from which the review is taken is hereby set aside. This proceeding is remanded to the Commission with direction to dismiss such proceedings absent additional probative evidence supportive of the changes [sic] made."

*J.I. Case v. Brown*, No. S–C–76–397, Slip Op. at 6 (Vigo Superior Ct. Feb. 16, 1977). The Indiana Court of Appeals dismissed Brown's appeal as untimely (as the record of proceedings was not timely filed) thus making the Superior Court's judgment final.

After Brown failed to file any specification or other evidence as required in the Vigo Superior Court's remand order, the ICRC Hearing Officer recommended that Brown's complaint be dismissed pursuant to the order of the Superior Court. On January 16, 1981, the ICRC accepted the Hearing Officer recommendation to dismiss Brown's claim and adopted his conclusions of law as final. These conclusions of law included:

"1. *The Findings of Fact and Conclusions Of Law of the Vigo Superior Court in this cause are final and binding as between the parties since no further appeal can be had therefrom.*

2. The Findings of Fact and Conclusions Of Law of the Vigo Superior Court established that Respondent [J.I. Case] did not commit a 'discriminatory practice' as that term is defined in IC 22–9–1–3(1) in that Respondent did not exclude Brown from equal opportunity because of his race or in retaliation for having filed a complaint as alleged in the four complaints.

3. Since Brown has not shown the existence of any additional evidence supportive of the charges made within the time ordered by the Hearing Officer, *these complaints should be dismissed pursuant to the order of the Vigo Superior Court.*

4. Any finding of fact which should have been deemed a conclusion of law is hereby adopted as such."

*Brown v. J.I. Case*, Nos. 06828, 07387, 07388, and 07519, (ICRC Dec. 4, 1980) (emphasis added).

The ICRC's final order of January 16, 1981, adopted the findings of fact and conclusions of law of the Vigo Superior Court as final. When Brown failed to present new evidence, the ICRC dismissed his complaint pursuant to the order of the Vigo Superior Court. When the ICRC denied Brown's motion to reconsider the dismissal of his complaint the order became final. When Brown failed to appeal the final order within the fifteen days allowed under IC 4–22–1–14, judicial review was precluded. The district court noted that the ICRC Order of January 16, 1981 went unreviewed "because of the plaintiff's own neglect in effectuating an appeal." The district court's finding was proper in stating

---

**10.** In *Elliott* the Supreme Court held that the complainant was entitled to a trial *de novo* of his Title VII claim in federal court since "[C]ongress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." 106 S.Ct. at 3225 (footnote omitted).

that "the plaintiff should not benefit by his own failure to avail himself with the full procedures provided by state law." *Brown v. J.I. Case*, TH 83–212–C, Mem.Op. at 15 (S.D.Ind. Dec. 12, 1985).

The record establishes that the ICRC held a hearing on February 19, 1976, to decide whether to make its prior temporary order final, at which time the plaintiff, represented by counsel, was given the opportunity to present whatever testimony and exhibits he desired. The Vigo Superior Court thoroughly reviewed the ICRC's Order and the record as established by the litigants, thus the dictate of footnote 7 of *Kremer* requiring judicial review is not violated. The Superior Court in its "conclusions of law" stated "there is a complete absence of any substantial, reliable, and probative evidence in the record to support a finding which would support the Commission's Order." It remanded the action to the ICRC with directions to dismiss "absent additional probative evidence supported of the charges made." Brown failed to effect either a timely appeal of the Vigo Superior Court's decision or to offer any new evidence to the ICRC in support of his claim thus the record was no different than the record originally before the Vigo Superior Court. We hold that the Superior Court's decision was a final judgment and are confident it would be accorded such respect in Indiana courts.

We must next determine whether the facts in the case support the invocation of the doctrine *res judicata*. In *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir.1982) we stated:

"The essential elements of the doctrine [of *res judicata*] are generally stated to be: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."

*Id.* at 199. Since we have previously held in this opinion that the Vigo Superior Court's decision was a final judgment, the initial element is satisfied. The second element of *res judicata*, the requirement that there be an "identity of the cause of action between both the earlier and later suit" is also present here. There has been no change in the factual allegations the plaintiff has made throughout the history of this case. The cause of action—employment discrimination—presented in federal court is identical to the one argued before both the ICRC and the Vigo Superior Court.

The third element of *res judicata*, that there be "an identity of parties or their privies" is also met in that the plaintiff and the defendant have been the same from the time the suit was first filed in 1975 to the present appeal.

The dictates of *res judicata* and the Due Process Clause require that we decide whether Brown was given a full and fair opportunity to litigate his claim. The record demonstrates that Brown, represented by counsel, had ample opportunity to present evidence and whatever exhibits he saw fit before the Vigo Superior Court.

A reading of the Vigo Superior Court's decision convinces us that the trial judge reviewed the administrative proceedings of the ICRC. We are confident that Indiana would treat the decision as a final judgment and point out that the decision was not appealed. Therefore the decision of the Vigo Superior Court is entitled to preclusive effect under 28 U.S.C. § 1738 and the doctrine of *res judicata*. Because Brown, represented by counsel, had the opportunity to present evidence and exhibits before the Vigo Superior Court, we also hold that Brown had a full and fair opportunity to litigate his claim.[11]

---

11. Brown argues that *res judicata* is not applicable when the defendant, not the plaintiff, chooses to take the controversy into state court. This Court's position on this argument was clearly stated in *Unger v. Consolidated Food Corp.*, 693 F.2d 703 (7th Cir.1982):

"Given the Supreme Court's holding [in *Kremer*] that Title VII does not partially repeal § 1738 and any state court decision must therefore be accorded preclusive effect, it should be immaterial whether plaintiff or defendant initiated the state court review." *Id.* at 710 n. 11.

## III.

■ Brown without citing any case law argues that the statutory provisions of 42 U.S.C. 2000e *et seq.* contemplate a *de novo* hearing in federal court, and that by following the procedures in Title VII, he may be "robbed" of that opportunity. Brown's argument fails to track the Supreme Court's *Kremer* decision:

> "Nothing in the legislative history of the 1964 Act suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court. While striving to craft an optimal niche for the States and the overall enforcement scheme, the legislators did not envision full litigation of a single claim in both state and federal forums. Indeed, the requirement of a trial *de novo* in federal district court following EEOC proceedings was added primarily to protect employers from overzealous enforcement by the EEOC."

456 U.S. at 473–74, 102 S.Ct. at 1893 (footnote omitted).

Earlier in this opinion we held that Brown had a full and fair opportunity to litigate his claim in state court in that he was given every opportunity to present evidence and exhibits in that forum, thus under the doctrine of *res judicata* and 28 U.S.C. § 1738 he is precluded from relitigating his claim again in federal district court. The Supreme Court has stated that Congress did not envision the passage of Title VII as giving a party the opportunity to litigate a single claim in both state and federal forums. This would be needlessly repetitious and wasteful of resources of an already overburdened judicial system. We hold that since Brown had a full, fair, and complete opportunity to litigate his claim in state court, he is not now entitled to a *de novo* proceeding in the federal court system to test another theory. Some place, somewhere, somehow we must put an end to this repetitious litigation. Finality of judicial proceedings must be accepted if we are to manage the ever growing caseload.

## IV.

■ Brown lastly argues that he was prejudiced when the trial court abused its discretion in allowing J.I. Case to assert the doctrine of *res judicata* in its motion for summary judgment on May 6, 1985, arguing that J.I. Case inexcusably delayed asserting the doctrine. In deciding whether the trial court abused its discretion in allowing J.I. Case to assert the doctrine of *res judicata* :

> "[T]he relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather, whether *any* reasonable person could agree with the district court ... a judge abuses his discretion when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, ... or where the supposed facts found are clearly erroneous as found."

*Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 563–64 (7th Cir.1984) (citations omitted) (emphasis in original). We must thus decide whether there is any rational evidence on which the trial court could have based its decision.

Brown argues that the defendant unreasonably delayed asserting *res judicata* when, in fact, it could have asserted the defense when the action was first instituted. Although we previously detailed the many steps this case has traversed in state administrative proceedings, state court, federal district court and now this appellate court, a review of some of this case's history is required.

On October 23, 1981, some eighty-eight days after receiving his Right-to-Sue Letter from the EEOC, the plaintiff filed four documents with the clerk of the United States District Court in Terre Haute, Indiana that included a Notice of Right-to-Sue, an affidavit of financial status in civil actions which contained a request for a court-appointed counsel and a pauper affidavit. On August 9, 1983, nearly two years later, the district court, without discussing Brown's request for court-appointed counsel, denied his request to proceed *in*

*forma pauperis.* Brown filed a *pro se* complaint on September 9, 1983, along with a request that the court rule on his pending request for a court-appointed attorney and a request that the court reconsider its August 9 decision regarding whether he could proceed *in forma pauperis.* On November 2, 1983, the trial court denied both of the plaintiff's requests.

On December 12, 1983, the trial court granted the defendant's motion to dismiss the suit pursuant to Rule 12(b)(6), Fed.R. Civ.P., holding that Brown's filing of an application for an appointment of counsel in conjunction with a Notice of Right-to-Sue Letter did not toll the ninety-day filing period established by 42 U.S.C. § 2000e-5(f)(1). The district court entered its judgment dismissing Brown's suit on January 5, 1984, and Brown appealed to this court. We reversed on January 17, 1985, *Brown v. J.I. Case Co.,* 756 F.2d 48 (7th Cir.1985), stating that "[B]rown's formal complaint, filed on September 9, 1983, was timely because the running of the ninety-day filing period should have been tolled until the November 2, 1983, district court denial of his request for appointed counsel." *Id.* at 51. On May 6, 1985, J.I. Case filed a motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure claiming the doctrine of *res judicata* and 28 U.S.C. § 1738 precluded the plaintiff from relitigating a claim already decided by the ICRC and the Vigo Superior Court.

While the case was pending in the appellate court, the defendant could not have invoked the doctrine of *res judicata* in the trial court. In addition, the defendant had not received certification of the final dispositions of the Vigo Superior Court and the related ICRC proceedings when it originally challenged the defendant's filing as barred by the ninety-day time limitation established by 42 U.S.C. § 2000e-5(f)(1). We hold that the trial court did not abuse its discretion in allowing J.I. Case to file its motion for summary judgment based on *res judicata* on May 6, 1985 since there was a thirteen month time lapse in which the action was in the appellate court and the defendants had not received the certifi-

cation of the final dispositions of the Vigo Superior Court and the ICRC when it filed its motion challenging Brown's complaint as time barred. We also hold that the plaintiff suffered no prejudice since the motion was filed well in advance of any pre-trial conference or the setting of a trial date.

### V.

We hold that the district court's grant of summary judgment was proper since Brown's claim was barred by 28 U.S.C. § 1738 and the doctrine of *res judicata.* We also hold that the trial court did not abuse its discretion in allowing J.I. Case to invoke the doctrine of *res judicata* as the basis for its motion for summary judgment.

AFFIRMED.